# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CASE NO. 4:12-cr-166 |
| | § | Judge Crone |
| BRENDAN W. COUGHLIN (1) | § | |
| HENRY D. HARRISON (2) | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is the Joint Motion to Suppress Fruits of Searches of PAM LLC and PR LLC on July 6, 2009 and Evidence Seized During Searches (Dkt. #33). After considering the relevant pleadings and the arguments of counsel at the November 28, 2012 hearing, the Court finds that the motion should be denied.

On October 9, 2012, Defendants[1] filed a joint motion to suppress (Dkt. #33). On October 16, 2012, the United States filed a response (Dkt. #35). On October 23, 2012, Defendants filed a reply (Dkt. #38). On November 28, 2012, the Court conducted a hearing on the motion.

Defendants Brendan Coughlin ("Coughlin") and Henry Harrison ("Harrison") move the Court for an order suppressing (1) all fruits of the searches conducted by the United States Securities and Exchange Commission ("SEC") and others on July 6, 2009, and thereafter at the offices of Provident Asset Management, LLC ("PAM") and Provident Royalties, LLC ("PRLLC"); (2) all items seized by the SEC and others at the offices of PAM and PRLLC on July 6, 2009, and thereafter; and (3) all evidence derived from the searches and seizures at the PAM and PRLLC offices.

---

[1] On December 20, 2012, Defendant W. Mark Miller filed a motion to adopt the motion to suppress filed by the co-defendants (Dkt. #47). On January 28, 2013, the Court granted the motion.

BACKGROUND

Between September 2006 and February 1, 2009, Coughlin and Harrison were two of the four principals of PRLLC, an entity that solicited investments for oil and gas projects in the United States. During the course of their business activities, Coughlin, Harrison, and others are alleged to have made false material representations and omissions of material fact to investors in order to solicit their investments. In particular, it is alleged that Coughlin, Harrison, and others failed to disclose the role of a third principal – Joseph Blimline ("Blimline")[2] – in order to conceal that Blimline had violated Michigan securities laws and used proceeds from later investors to pay dividends to earlier investors.

After the collapse of the scheme, the SEC intervened by seeking a temporary restraining order to permit a receiver – Dennis Roossien (the "Receiver") – to take control over the Provident entities. On July 2, 2009, United States District Judge Sam Lindsay for the Northern District of Texas issued an ex parte temporary restraining order at the request of attorneys from the SEC's Salt Lake City Regional Office. The temporary restraining order was issued based on two declarations executed by Scott Frost ("Frost"), a staff accountant with the SEC in Salt Lake City. The temporary restraining order gave the Receiver broad powers to enter and take possession of the PAM and PRLLC offices, to search those offices, and to seize all PAM and PRLLC property found there or anywhere else. The temporary restraining order authorized Receiver to take possession of all the assets, bank accounts, books, records, and all other documents relating to the Provident entities. On July 6, 2009, the receiver and other federal employees and contractors entered the PAM and PRLLC offices. The federal agents took control of the businesses; dismissed most employees; searched the

---

[2] Blimline was sentenced by the Court in connection with this scheme on May 3, 2012. (4:10cr137.) On July 12, 2012, the government filed a single-count information in the Eastern District of Texas charging an individual known as PM – the fourth Provident principal – for his role in the scheme to defraud the Provident investors. (4:12cr169.) PM entered a plea on November 8, 2012.

premises; and took possession of virtually all property found there, including all books and records, computers, and servers. At some point the receiver made the seized items available to the FBI and the Department of Justice for use in the criminal investigation of Defendants.

The United States represents, and no evidence is offered to contest that in this case, there was no coordination between law enforcement, the SEC, and the Receiver relating to the receivership. The United States represents that the creation of the receivership and the seizure of documents occurred without the involvement of federal law enforcement.

Defendants did not contest the temporary restraining order and stipulated to the entry of the preliminary injunction. *See, e.g.*, 3:09-cv-01238-L, Docket No. 29 ("Agreed Continuance of the Preliminary Injunction Hearing and Stipulation to Extension of the Temporary Injunction as to Defendants Brendan W. Coughlin and Henry D. Harrison") (filed 07/16/2009); 3:09-cv-01238-L, Docket No. 34 ("Agreed Order Continuaning [sic] the Preliminary Injunction Hearing and Stipulation to the Extension of the Temporary Restraining Order as to Defendants Brendan W. Coughlin and Henry D. Harrison.") (filed 07/17/2009); and 3:09cv01238-L, Docket No. 64 (filed 09/11/2009) (noting that the plaintiff and "Defendants Brendan W. Coughlin and Henry D. Harrison" ... "stipulated to the entry of this Order of Preliminary Injunction").

Defendants assert that the search of the PAM and PRLLC offices and the seizure of their contents violated the right of Coughlin and Harrison under the Fourth Amendment to be free from unreasonable searches and seizures. Defendants further assert that the good faith exception to the exclusionary rule does not apply and the Court should suppress the seized items and their fruits. Specifically, Defendants argue that the searches of the PAM and PRLLC offices required a warrant. Defendants cite the Court to *G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977). Defendants

are correct that the Supreme Court has held that the search of non-public areas of corporate offices requires a warrant, absent a valid exception. Defendants are also correct that exceptions to the warrant requirement are "few in number and carefully delineated." *See Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984) (quotation omitted). The government bears a "heavy burden" to show that an exception applies. *Id*. Defendants argue that the SEC did not obtain a search warrant before entering the offices of PAM and PRLLC, searching the offices, and seizing the records, computers, and other property found there. Defendants point to the Fifth Circuit decisions that recognize that an ex parte TRO may afford the same procedural safeguards as a warrant, including a determination by a neutral judicial authority, citing *United States v. Evans*, 572 F.2d 455, 486 n.43 (5th Cir. 1978). Defendants then assert that the TRO signed by Judge Lindsay on July 2, 2009, is the functional equivalent of the "warrant" that the Fourth Amendment requires. Defendants then argue that the TRO falls short of Fourth Amendment requirements.

The Government responds that the Fifth Circuit has rejected these type of arguments under virtually identical circumstances in *United States v. Setser*, 568 F.3d 482 (5th Cir. 2009). In *Setser*, a jury convicted Gregory Setser and his sister Deborah for operating a multi-million dollar Ponzi scheme. *Id.* at 486. The SEC and FBI conducted parallel civil and criminal investigations, with an indictment returned on November 6, 2003, a civil action filed on November 17, 2003, and the indictment unsealed on November 18, 2003. *Id.* With the filing of the civil action, the district court appointed Dennis Roossien as receiver; after the arrests of the defendants, Roossien and his agents entered the defendants' business offices, seized records, and turned them over to law enforcement. *Id.* The Government asserts that on appeal, Setser argued the same points that Coughlin and Harrison raise in this case: that the receivership order "failed to comply with the Fourth Amendment's

4

particularity requirement, making it an impermissible general warrant"; and that the receiver "exceeded his authority by seizing documents 'completely unrelated' to the purpose for which he was appointed." *Id.* at 487.

The Fifth Circuit rejected Setser's arguments and first determined that a temporary restraining order is not a warrant and that the particularity requirement "is not translatable to the receiver context." *Id.* at 487-88. Specifically, the Fifth Circuit found:

> Receivers are not like the [*United States v. Burger*, 482 U.S. 691 (1987)] state inspectors. They, because of the nature of the regulated business, may be permitted on their own and without prior court approval to make broadly intrusive and unannounced inspections in order to assure compliance with the state's rules. A receiver takes over property only after a court has agreed with the arguments and evidence that such a takeover is necessary. The *Burger* requirement of "a constitutionally adequate substitute for a warrant" in some circumstances therefore does not add anything new to the prior rules for receivers.

*Setser*, 568 F.3d at 487. While Setser argued that "there are limits, and among them is something akin to the requirement that a search warrant provide specific guidance on what is and what is not within the scope of permissible search and seizure," he was forced to concede that "no court has ever held that the equivalent of a search warrant be issued in order for a receiver to be permitted to seize the property of the subject entity." *Id.* at 488. The Fifth Circuit "found no statutory or judicially created limits of the nature Setser argues to exist to a receiver's rights to seize assets." *Id.*

The Fifth Circuit concluded:

> Because the receiver was taking possession of everything in those categories that had been the property of the defendants for whom receivership was authorized, further particularity would have served no purpose. After the seizure, the receiver had possession of the property only because he had been authorized by court order. We find no basis to support the argument that more was needed.

*Id.*

5

Setser also argued that "even if the Receivership Order as written was valid, 'the Receiver exceeded even the most expansive interpretation of the authority it granted by conducting a general, exploratory search and seizure of documents unrelated and inconsequential' to the receivership." *Id.* The Fifth Circuit found that Setser failed to provide any indication of what, if any, evidence was allegedly seized outside the scope of the receivership order. *Id.* at 489.

Setser also asserted that "because the receiver lacked the authority to seize all the documents he took, law enforcement agents needed to obtain a warrant in order to review the information obtained from the receiver." *Id.* at 490. The Fifth Circuit rejected this argument finding that "[o]nce the receiver took possession of the property, [the defendant's] possessory rights were lost . . . [the defendant] could neither exclude others from the seized property nor take precautions to maintain the privacy of the property." *Id.* at 491. The Fifth Circuit also found "justification for what occurred from the fact that a receiver is to be appointed only after a 'prima facie' showing of fraud and mismanagement. It would make little sense to hold that [the defendant] continued to exercise veto power over the receiver's uses of his property when the purpose of the receivership was to preserve assets from fraudulent depletion." *Id.* (citation omitted). The Fifth Circuit found "no violation of the Fourth Amendment for a receiver who is a 'lawful custodian' of the records to turn them over to law enforcement agents, at their request." *Id.* at 490.

In their reply, Defendants assert that Government officials used false statements and material omissions to obtain an ex parte TRO from a federal judge and, on the authority of the TRO, the officials entered a private business, searched every office, desk, document, and computer, and seized everything they found. The officials then turned the seized items over to federal law enforcement agents, who used the items to prosecute Defendants.

Defendants assert that the only case relied upon by the Government is *Setser*. Defendants argue that decades of Fourth Amendment cases show that the Fourth Amendment applies to these circumstances. Defendants' argument is misplaced. None of the cases cited by Defendants involve an ex parte TRO in a civil action where a receiver is appointed and the receiver turns over the seized items to governmental officials. The Court agrees that the Fourth Amendment applies to corporations and businesses. The Government does not deny that. Application of *Setser* does not change the decades of law cited by Defendants. *Setser* addresses the factual situation the Court is faced with in this case: what happens when a receiver is appointed and seizes items, and then gives the seized items to law enforcement. *Setser* is the only case cited by any party[3] that addresses this situation and is binding authority. In *Setser*, the Fifth Circuit was faced with coordination between law enforcement, the SEC, and the receiver. In this case, there was no such coordination. In this case, the Receiver was appointed and the documents seized without the involvement of federal law enforcement.

In addition, at the hearing, the Court questioned defense counsel on the fact that Defendants had an opportunity to contest the actions of the Receiver. In fact, Defendants did not contest the TRO and ultimately stipulated to the entry of the preliminary injunction. Thus, Defendants had the opportunity to contest the actions of the Receiver and agreed to an injunction. After having the opportunity to contest the actions of the Receiver and failing to do so, the Court does not see how Defendants can now come in and complain about the actions of the Receiver in turning over seized items to federal law enforcement.

---

[3] At the hearing, Defendants' counsel conceded that the facts of *Setser* and the case now before the Court are similar.

The Court finds that *Setser* is controlling in this case and forecloses Defendants' arguments made in their motion. Therefore, Defendants' motion should be denied.

Defendants also assert that the Court is required to conduct a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Defendants assert that the TRO was issued based upon the two declarations which contain intentional or reckless material misstatements and omissions which requires a hearing.

The Government responds in a footnote. The Government argues that *Franks* applies to affidavits for warrants, but according to *Setser*, temporary restraining orders are not warrants, making *Franks* inapplicable. The Government next asserts that while Defendants now selectively provide excerpts from certain documents to defend their conduct, the fact remains that the SEC made a prima facie showing of fraud and mismanagement to the district court in applying for the temporary retraining order, and the Defendants did not contest the showing despite having the opportunity to do so. The Government argues that Defendants cannot relitigate the propriety of this decision with the benefit of hindsight. In their reply, Defendants argue that *Setser* does not say anything about *Franks* and that *Franks* applies to this situation.

Defendants are correct that *Setser* does not mention *Franks*. Defendants cite the Court to no cases that hold that *Franks* would apply to this situation. The Receiver was appointed in a civil context. A prima facie showing was required to support the appointment. Defendants never challenged the appointment, and in fact agreed to the injunctive relief. This activity again all occurred in the civil context. Defendants argue that they only "acquiesced in an order that granted them sufficient funds to support their families and pay their attorneys." The Court rejects this argument. No hearing is necessary.

## RECOMMENDATION

The Court recommends that is Joint Motion to Suppress Fruits of Searches of PAM LLC and PR LLC on July 6, 2009 and Evidence Seized During Searches (Dkt. #33) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 4th day of February, 2013.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE